UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SERGEY SPITSYN,

Plaintiff,

v.

RICHARD MORGAN, *et al*,

Defendants.

Case No. C04-5134FDB-KLS

SECOND ORDER REGARDING PLAINTIFF'S MOTION FOR AN ORDER TO COMPEL DISCOVERY

This matter has been referred to Magistrate Judge Karen L. Strombom pursuant to 28 U.S.C. § 636(b)(1), Local Magistrates Rules MJR 3 and 4, and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72. The case is before the Court on defendants' response (Dkt. #178) to the Court's order (Dkt. #174) regarding plaintiff's motion for an order to compel discovery (Dkt. #162). After reviewing defendants' response, plaintiff's reply thereto (Dkt. #181), and the balance of the record, the Court finds and orders as follows:

(2)[1] Position Descriptions

Plaintiff claimed defendants failed to provide the descriptions of their official positions signed by each of them that he requested. The Court granted plaintiff's request only to the extent that defendants

[1]The section numbers used herein correspond with the paragraph numbers contained in the Court's prior order regarding plaintiff's motion for an order to compel discovery, which, in turn, corresponded to those contained in that motion.

were ordered to produce a description of the position of a level 1 corrections officer, which plaintiff had claimed was the job held by defendant William Bernay.

In response, defendants state that no document exists for a level 1 corrections officer, and that defendant Bernay was in training to become a "corrections officer 2," which they further state, and the Court previously found, was provided to plaintiff. Plaintiff, in his reply, states he does not object to this response by defendants. Accordingly, for this reason, plaintiff's request for a description of the position of a level 1 corrections officer hereby is DENIED.

(5) History and Records of White Supremacist and Security Threat Group Activity

Plaintiff requested defendants be ordered to produce the "'extensive institutional history of white supremist [sic] activity,'" referred to in an August 6, 2001 "Administrative Segregation Referral," and records showing him to be "affiliated with the woodpile & stg [security threat] group" referred to in an "Initial Serious Infraction Report, dated 5-30-02." (Dkt. #162, p. 3; Dkt. #169, Exhibit 1, Attachment A, p. 2). Defendants stated that they produced 61 pages of documents in response to plaintiff's discovery request, that other inmates' names and Department of Corrections ("DOC") numbers were redacted "in order to protect the identities of other individuals who may have provided information to DOC staff and due to safety and security issues," and that such redactions were justified. (Dkt. #169, p. 3).

The Court found defendants's stated reasons to be insufficient, and ordered them to file a response explaining, with adequate support, why plaintiff should be prevented from receiving all of the requested discovery, including the names and DOC numbers of other inmates contained therein, due to issues of safety and security. In their response, defendants state because it was determined that plaintiff knew the identity of the individuals whose names and DOC numbers were redacted, or that those individuals were not providing anything related to security threat groups, they will provide plaintiff un-redacted copies of those documents from which the names and DOC numbers had been redacted. Plaintiff does not object to defendant's particular response here. Accordingly, the Court finds this issue is now moot.

Plaintiff, however, argues defendants still have made no showing as to why they cannot provide the specific evidence of his security threat group affiliation and white supremacist history noted above. In its prior order, the Court found defendants did not expressly dispute they had not produced this particular discovery requested by plaintiff, although they did object in part, without sufficient justification the Court also found, on the basis that plaintiff's request was overly broad and not reasonably calculated to lead to

admissible evidence. The Court further found insufficient defendants' reliance on the issue of safety and security, in that they made no showing this was the reason for which they failed to produce the particular discovery being requested, other than with respect to the names and DOC numbers that had been redacted. Indeed, in his reply, plaintiff appears not to object to those names being redacted from the above.

It is unclear whether defendants have produced all documentation responsive to plaintiff's request here. Given defendants lack of further response to this issue, however, plaintiff's request for production of the "'extensive institutional history" of white supremacist activity referred to in the August 6, 2001 "Administrative Segregation Referral," and records showing him to be "affiliated with" the security threat group referred to in the May 30, 2002 "Initial Serious Infraction Report" hereby is GRANTED to the extent such documentation still exists and has not yet been produced, and does not reveal the identity of or other revealing information regarding confidential informants as discussed with respect to section number (6) below. Defendants shall provide all such documentation by the date set forth below.

(6) Confidential Information Regarding November 17, 2004 Segregation

Plaintiff sought certain confidential information regarding his placement in punitive segregation on November 17, 2004. Defendants responded that they had provided 53 pages of documents, withholding only one two-page document due to safety and security concerns, and redacting information provided by a confidential informant contained on two other pages and the names and DOC numbers of other inmates from several other pages, both also due to safety and security issues.

The Court found the justifications defendants gave for withholding and redacting the information noted above to be insufficient. However, again recognizing that the release of both the names and DOC numbers of other inmates and, in particular, information obtained from a confidential informant may have implicated real security concerns, the Court ordered defendants to file a response, explaining why plaintiff should be prevented from receiving the redacted names and DOC numbers of other inmates due to issues of safety and security. With respect to the confidential informant information, the Court further ordered defendants to file for *in camera* review as *ex parte* documents, unredacted copies of that information, accompanied by an adequately supported explanation of the specific safety and security issues implicated by disclosure thereof, so a proper determination could be made.

In response, defendants state that in regard to those pages wherein the names and DOC numbers

of other inmates were redacted, those redactions related to an inmate known to plaintiff, and thus there is no longer a safety or security risk in producing them in un-redacted form. Defendants thus state that they will provide those documents to plaintiff. Accordingly, and because plaintiff has voiced no objection to this, the Court, as before, finds this issue now to be moot.

With respect to the documentation containing information relating to the confidential informant, after having reviewed the un-redacted copies thereof provided by defendants *ex parte* for *in camera* review, and defendants explanations as to why providing that information to plaintiff would create serious safety and security concerns, the Court finds redaction of such information to be appropriate. Clearly, if this information were to produced, the safety and security of one or more other inmates, as well as the safety and security of the institution where plaintiff is incarcerated, would be jeopardized. Accordingly, plaintiff's request for this information hereby is DENIED.

Plaintiff argues that if he is not given access to the confidential informant information he will be unable to question that informant and determine whether or not the information is authentic or even know whether or not such an informant exists. Plaintiff further argues that if he is being held to high stringent ethical standards in representing himself in this matter, he should be expected both to conduct himself in a professional manner and abide by confidentiality laws. With respect to the first argument, the Court finds the security concerns raised by defendants and the confidential informant information itself, as explained above, is a proper basis for redacting it. Second, while the Court certainly appreciates plaintiff's implied promise to abide by high ethical standards, this assurance, though perhaps well-intentioned, is insufficient to ensure the above institutional and inmate safety and security concerns are not jeopardized.

(7) Documents Regarding January 1, 2005 Incident

Defendants produced 72 pages of documents in response to this particular discovery request made by plaintiff, withholding three photographs of other injured inmates, who apparently were involved in a fight with plaintiff, due to safety and security concerns. The Court found this an insufficiently asserted basis for not producing the photographs, and ordered defendants to file a response explaining why plaintiff should not receive them. In their response to the Court's order, defendants state as follows:

> Photographs of another inmate who Plaintiff has injured could be used as "trophies" and could be used to dominate and intimidate other offenders. However, given that the photographs in this particular situation may be used as evidence in a trial, Defendants agree to a middle ground in balancing prison security with Plaintiff's litigation rights. Defendants would arrange for Plaintiff to view the photographs

> (DEFS 229, 232, and 233), but not for him to possess them; they would be secured in the Superintendent's Office of Larch Corrections Center, like the previously viewed videotape and CD/DVD.

(Dkt. #178, p. 4). Plaintiff states in his reply that he does not object to defendants' proposal for handling the photographs. Accordingly, the Court finds this issue to be moot as well.

Plaintiff also sought copies of grievances filed by another inmate whom plaintiff designated by a specific DOC number, and whom he stated was involved in the January 1, 2005 incident. Defendants objected, arguing that inmates are prohibited from possessing information about other inmates, as it may threaten the safety and security of DOC staff and/or other inmates. However, the Court found defendants failed to show that: (a) any such grievances would contain information concerning other inmates, as opposed to merely the January 1, 2005 incident itself, which would be objectionable on safety and security grounds, and (b) why possession of information about other inmates presents safety and security concerns. The Court thus ordered defendants to file a response, explaining why plaintiff should not receive copies of these grievances.

Defendants continue to object, as they did previously, on the grounds that such grievances are not reasonably calculated to lead to admissible evidence. The Court rejected this argument in its previous order and finds no reason to overturn that ruling. Defendants do state though that they will provide copies of "Level II and Level III grievance responses for Grievance Log I.D. #0500089 as DEFS 844 and 845." (Dkt. #178, p. 5). Presumably these are grievance responses relating to the particular incident in question. Defendants, however, decline to provide the "Level I grievance and response," as they state they "pose safety and security concerns for the institution." Id.

Plaintiff does not object to the production of the Level II and Level III grievance responses. He argues in his reply, however, that defendants have failed to show what those safety and security concerns are that they state justify their withholding of the Level I grievance and response, and thus that they should be required to produce them. The Court agrees the mere statement that the Level I grievance and response "pose safety and security concerns for the institution" is not enough. The Court previously has found such general responses, without more, to be insufficient to allow for proper determination as to the propriety of granting plaintiff's discovery requests.

The Court though will not automatically grant this request. Rather, once more, defendants shall file a response by the date set forth below, explaining, with adequate support, why plaintiff should not be

provided with the above Level I grievance and response. To the extent such an explanation may require the disclosure of confidential informant information or other information posing similar safety or security issues, that information may be filed *ex parte* for the Court's *in camera* review in the manner set forth in the Court's previous order.

(8), (9) Documents and Camera Recordings Regarding February 28, 2005 Incident

Plaintiff requested all documents and camera recordings regarding a February 28, 2005 incident. Defendants responded that after initially seeking clarification from plaintiff regarding what he meant by use of the term "incident," they both produced a one-page grievance and objected on the basis that the request was not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff countered that defendants did not provide defendant Sheldon Weaver's February 28, 2005 incident report, nor did they provide the requested camera recordings.

The Court found that because it was not clear from defendants' response whether the grievance they produced concerned the actual February 28, 2005 incident to which plaintiff refers, nor was it exactly clear what that incident concerned and what relation it had to the claims contained in plaintiff's second amended complaint, the Court was inclined to agree that plaintiff's request for both the documentation and camera recordings was not reasonably calculated to lead to the discovery of admissible evidence. On the other hand, the Court noted that defendants did produce one document to which they apparently felt plaintiff was entitled – and thus, by implication, to which they apparently felt was at least somewhat likely to lead to the discovery of admissible evidence – but did not explain why they felt plaintiff's requests for other documentation and camera recordings regarding the February 28, 2005 incident were not reasonably likely to lead to the discovery of admissible evidence.

For the above reasons, the Court ordered defendants to produce any such other documents and camera recordings to the extent they existed, or file a response explaining why they should not be made to do so. In response, defendants state that the incident to which plaintiff referred "is described on a one-page grievance form (0505003) that includes a staff response," which they further state they provided to plaintiff. In addition, defendants state that no other documentation or camera recordings of that incident exist. Plaintiff states that he has no objections to defendants' response here. Accordingly, this issue too the Court finds now to be moot.

Based on the foregoing discussion, and the discovery rulings contained in the Court's prior order,

only the following two discovery items remain: (i) defendants' production of the documentation, to the extent it exists, addressed in section (5) above; and (ii) defendants' filing of an explanation, with adequate support, regarding the safety and security concerns addressed in section (7) above. Defendants shall both produce and file the above items respectively by **no later than October 29, 2007**. Plaintiff shall file any objection or reply thereto by **no later than November 8, 2007**. Any remaining issues regarding these two discovery items shall be noted for consideration on **November 9, 2007**.

The Clerk is directed to send a copy of this Order to plaintiff and counsel for defendants.

DATED this 15th day of October, 2007.

Karen L. Strombom
United States Magistrate Judge